UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YVETTE E.[1], | No. 4:18-CV-5181-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 12. Plaintiff Yvette E. appeals a denial of benefits by the Administrative Law Judge (ALJ). She argues the ALJ erred by: 1) improperly weighing the opinions

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. The Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

of her medical providers; 2) improperly determining that her impairments did not meet or equal a listed impairment; 3) discounting Plaintiff's subjective symptom testimony; and 4) improperly determining steps four and five based on an incomplete hypothetical question to the vocational expert. In contrast, the Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3]  Step one assesses whether the claimant is currently engaged in a substantial gainful activity.[4] If the claimant is, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or

---

[3] 20 C.F.R. § 416.920.

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If the impairment does not, the disability-evaluation proceeds to step four.[12]

Step four assesses whether the impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform her previous work, benefits are denied.[14] If the claimant cannot perform this work, the disability-evaluation proceeds to step five.[15]

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* §§ 416.920(a)(4)(iii), 416.920(d).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(e).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

[15] *Id.*

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of her RFC, age, education, and work experience.[16] If so, benefits are denied. If not, the claim is granted.[17]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[18] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[19]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application on January 19, 2015, alleging a disability onset date of October 13, 2013.[20] Her claim was denied initially and upon reconsideration.[21] A video hearing was held on August 21, 2017, before Administrative Law Judge Jesse Shumway.[22]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[16] 20 C.F.R. § 416.920(a)(4)(v), (g); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[17] 20 C.F.R. § 416.920(g).

[18] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[19] *Id.*

[20] AR 204-09.

[21] AR 114-17, 120-28, 132-42.

[22] AR 32-76.

- Step one: Plaintiff had not engaged in substantial gainful activity since January 19, 2015, a date after the alleged onset date of October 13, 2013;

- Step two: Plaintiff had the following medically determinable severe impairments: unspecified bipolar disorder, attention deficit hyperactivity disorder (ADHD), and unspecified anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but Plaintiff could not perform at an assembly-line pace;

- Step four: Plaintiff was capable of performing past relevant work as a cashier II, department manager, and sales clerk; and alternatively,

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as final assembler, addresser/hand packager, and microfilm document preparer.[23]

When assessing the medical-opinion evidence, the ALJ gave:

---

[23] AR 17-26.

- great weight to the opinions of 1) Marian Martin, Ph.D., the testifying reviewing medical expert; and 2) Dave Sanford, Ph.D., the reviewing medical evaluator for the state agency;

- partial weight to the evaluating opinion of Amy Dowell, M.D.;

- little weight to the opinion of Plaintiff's treating physician, Dr. Benjamin Gonzalez; and

- no weight to the opinions that predated Plaintiff's filing date, including the opinion of Dr. Carine Bauer, Psy.D.[24]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

---

[24] AR 22-23.

[25] AR 21-24.

[26] AR 1-6, 202-03.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence and make credibility assessments, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30]

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

---

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *Id.*

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Applicable Law and Analysis

### A. Medical Opinions

Plaintiff challenges the ALJ's assignment of little weight to Dr. Gonzalez's opinion, partial weight to Dr. Dowell's opinion, and no weight to Dr. Bauer's opinion.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship: 1) a treating physician; 2) an examining physician who examined but do not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician.[35] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[36] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[37]

As discussed below, the Court finds Plaintiff failed to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[35] *Id.*

[36] *Id.*

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

1

    1.   <u>Dr. Gonzalez</u>

Dr. Gonzalez treated Plaintiff from at least 2013 to 2017.[38] In July 2017, Dr. Gonzalez completed a Mental Residual Functional Capacity Assessment on which he opined that Plaintiff was:

- mildly limited in her abilities to accept instructions, respond appropriately to criticism from supervisors, and travel in unfamiliar places or use public transportation;

- moderately limited in her abilities to remember locations and work-like procedures, carry out very short and simple instruction, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple-work-related decisions, complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and

---

[38] *See, e.g.*, AR 542-46, 604-09, 714, 718, 734, 737.

cleanliness, and be aware of normal hazards and take appropriate precautions; and

- markedly limited in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.[39]

As to Plaintiff's "B" criteria of mental listings, Dr. Gonzalez opined that Plaintiff's ability to interact with others was mildly limited and abilities to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage oneself were markedly limited.[40] In addition, Dr. Gonzalez found that Plaintiff was likely to be off-task more than thirty percent of a normal work week and be absent four or more days per month.[41]

The ALJ discounted Dr. Gonzalez's opinion because 1) he completed a check-box form without providing any explanation for his opined selections; 2) it was not supported by Dr. Gonzalez's treatment notes; 3) it was more limiting than the

---

[39] AR 743-44.

[40] AR 745.

[41] AR 746.

opinions from other acceptable medical sources; and 4) it was inconsistent with the longitudinal medical record.[42]

First, the ALJ's finding that Dr. Gonzalez's check-box opinion was not explained is a rational finding supported by substantial evidence as Dr. Gonzalez did not include any explanation under the form's Comment section.[43]

Second, the ALJ's finding that Dr. Gonzalez's treatment notes did not support his opined restrictions is a rational finding supported by substantial evidence. The treatment notes support the ALJ's finding that Plaintiff's "mood stabilized once she was compliant with her medications and in remission of her substance abuse, and she has remained stable from 2015 through" the ALJ's decision.[44] That Dr.

---

[42] AR 23.

[43] AR 746; *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[44] AR 22 (citing AR 717-18; AR 721; AR 723 (noting mood stability on current psychiatric medication, good insight and judgment, intact orientation, and linear thought process); AR 725 ("The patient reports maintaining her mood stability, focus, and attention on her current psychotropic medications."); AR 731 ("She has not had any significant mood swings since her last appointment and taking her medications regularly"); AR 733 (noting that Plaintiff was not taking her psychiatric medications regularly and therefore her mood started getting worse)).

Gonzalez's opined check-box restrictions were not supported by his treatment notes was a clear and convincing reason to discount Dr. Gonzalez's opinion.[45]

Third, the ALJ's finding that Dr. Gonzalez's more-limiting opinion was inconsistent with the other medical opinions is rational and supported by substantial evidence. Focusing on the examining opinions, the ALJ found the opinion of Dr. Marian Martin, Ph.D., the impartial medical expert at the hearing, was supported by the record and assigned great weight to Dr. Martin's opinion. Dr. Martin opined that Plaintiff would not have any significant difficulty understanding, remembering, or applying information; interacting with others; adapting or managing one's self, but that she may have moderate difficulties with concentration, persistence, and pace—but those symptoms were well-managed given Plaintiff's medication and abstinence from drugs.[46] Dr. Martin only recommended a non-fast-pace-production work limitation.[47]

Similarly, examining physician Dr. Amy Dowell opined that Plaintiff would have difficulty maintaining regular attendance because of her bipolar disorder if not controlled with medication, but Dr. Dowell found that because Plaintiff's bipolar

---

[45] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

[46] AR 46-53.

[47] AR 47-48.

disorder was adequately controlled by medication, she could then-currently work.[48]

As is discussed more, the ALJ incorporated Dr. Dowell's opinion that Plaintiff required special or additional instructions due to her ADHD by restricting Plaintiff to non-assembly-pace work. Dr. Dowell did not otherwise opine that Plaintiff's functional abilities were limited.[49]

In light of these examining opinions, that Dr. Gonzalez's more-limiting opinion was inconsistent with the other medical opinions was a clear-and- convincing reason to discount Dr. Gonzalez's opinion.

Finally, the ALJ's finding that Dr. Gonzalez's opinion was inconsistent with the longitudinal medical record is rational and supported by substantial evidence. As previously mentioned, Dr. Gonzalez's treatment notes spanning from 2013 to 2017 reflect that Plaintiff's conditions were stabilized when she took her medication and abstained from drugs and were not as limiting as opined by Dr. Gonzalez. Moreover, the ALJ rationally found that the record reflected that Plaintiff's mental-

---

[48] AR 661.

[49] AR 661 (opining that Plaintiff was able to manage her funds; could perform simple and repetitive tasks and detailed and complex tasks; could accept instructions from supervisors; could interact with coworkers and the public; could complete a normal workday/workweek without interruptions from a psychiatric condition; and could deal with the usual stress encountered in the workplace).

health appointments were reduced from every 4-6 weeks to every 2-3 months.[50] That the longitudinal medical record was inconsistent with Dr. Gonzalez's opinion was a clear and convincing reason to discount the opinion.[51]

Plaintiff failed to establish that the ALJ erred by discounting Dr. Gonzalez's opinion.

### 2. Dr. Dowell

In September 2015, Dr. Dowell conducted a mental-health evaluation of Plaintiff.[52] This evaluation included a mental-status examination and a review of Plaintiff's March 2015 adult function report and treatment notes from Lourdes Counseling Center dated December 24, 2014, January 13, 2015, and January 27, 2015. As discussed above, Dr. Dowell opined that Plaintiff was largely functional but that she may have difficulty performing work activities on a consistent basis without special or additional instructions due to her ADHD and may have difficulty maintaining regular workplace attendance due to her bipolar disorder. But ultimately Dr. Dowell opined that, because Plaintiff's bipolar disorder symptoms

---

[50] AR 23 (citing AR 714-39).

[51] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[52] AR 657-61.

were under control with treatment, she would not have attendance issues and could work.[53]

The ALJ assigned partial weight to Dr. Dowell's opinion and 1) highlighted that Dr. Dowell noted that Plaintiff's bipolar disorder was well controlled with medication and therefore not impairing Plaintiff's ability to work and thus the ALJ found Dr. Dowell's opinion as to attendance issues speculative and not supported by the longitudinal medical record; and 2) incorporated Dr. Dowell's opinion that Plaintiff needed special or additional instructions because of her ADHD into the RFC by limiting Plaintiff to non-assembly-line-pace work.[54] Plaintiff failed to establish the ALJ erred by assigning partial weight to Dr. Dowell's opinion.

First, the ALJ's decision to discount Dr. Dowell's attendance-related opinion is rational and supported by substantial evidence. As the ALJ noted, Dr. Dowell herself indicated that Plaintiff's bipolar condition was not then impairing her ability to work. Therefore, Dr. Dowell's opinion that Plaintiff may have attendance issues in the future due to her bipolar disorder was speculative.[55] Moreover, the subsequent

---

[53] AR 661.

[54] AR 21-22.

[55] *See Coaty v. Colvin*, 673 Fed. Appx. 787, 788 (9th Cir. 2017) (affirming ALJ's determination that medical opinion was speculative).

medical record reflects that Plaintiff maintained mood stability.[56] This was a legitimate and specific reason to discount Dr. Dowell's attendance-related opinion.

Second, while a different rational finding could be made as to whether the RFC's non-assembly-line work limitation sufficiently incorporated Dr. Dowell's opinion about Plaintiff's need for special or additional instructions due to her ADHD, the ALJ's finding in this regard is a rational incorporation of this opined limitation.[57]

On this record, the ALJ's assignment of partial weight to Dr. Dowell's opinion is supported by substantial evidence.

3.   Dr. Bauer

Dr. Bauer evaluated Plaintiff in 2014—before the filing of Plaintiff's instant disability claim.[58] The ALJ gave no weight to Dr. Bauer's opinion because it was "of little relevance to the time period at issue."[59] Plaintiff argues the ALJ erred by failing to consider Dr. Bauer's opinion, as Plaintiff's October 2015 disability claim should have been treated as an implied request for reopening Plaintiff's prior disability claim, which was denied on April 30, 2014. However, the decision whether to treat a disability claim filed within twelve months of the Commissioner's denial of the prior disability claim as an implied request for reopening of the prior disability claim lies

---

[56] AR 714-39.

[57] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

[58] AR 575-81.

[59] AR 24.

with the ALJ. Because the ALJ specifically found that he was not "expressly or implicitly reopen[ing] any prior application," the ALJ's denial to reopen is not subject to this Court's judicial review.[60] Moreover, the record reflects that Plaintiff's mental-health conditions were relatively stable since 2015.[61]

**B.      Step Three: Listings**

Plaintiff contends the ALJ erred by finding that Plaintiff's mental-health impairments did not meet Listings 12.04, 12.06, 12.11, and 12.15, singly, or in combination, based on Dr. Gonzalez's opined marked limitations in the "B" criteria and found "C" criteria. However, as discussed above, the ALJ rationally discounted Dr. Gonzalez's opinion, including the marked limitations and "C" criteria limitations. Therefore, Plaintiff failed to establish that the ALJ erred at step three.

---

[60] AR 24; *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996) (recognizing that the Commissioner's decision to not reopen a disability claim is purely discretionary and a discretionary decision is not a "final decision" and therefore is not subject to judicial review).

[61] *Cf. Lewis v. Apfel*, 236 F.3d 503, 509-10 (9th Cir. 2001); HALLEX I-2-0-10, B.1. (recognizing that the ALJ "[n]eed not make a finding on the issue of reopening the determination or decision if issuing an unfavorable decision" if "the additional evidence does not warrant reopening a prior determination or decision").

## C.    Plaintiff's Symptom Reports

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports.

In examining Plaintiff's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[62] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[63]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.[64]  Specifically, the ALJ found Plaintiff's symptom reports inconsistent with the objective medical evidence, her course of treatment, and her work-related activities.

---

[62] *Molina*, 674 F.3d at 1112.

[63] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[64] AR 21-24.

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[65] However, medical evidence is a relevant factor in considering the severity of the reported symptoms.[66] As discussed above, Dr. Gonzalez's treatment notes, along with the longitudinal medical record, indicate that Plaintiff's mental health was largely stable when she maintained sobriety and complied with her medications, in contrast to Plaintiff's reported disabling symptoms. This was a relevant factor for the ALJ to consider.

Second, the ALJ's finding that Plaintiff's reported symptoms were inconsistent with her course of treatment was rational and supported by substantial evidence. Dr. Dillon found that Plaintiff's bipolar disorder was stable in 2015.[67] In addition, Dr. Gonzalez's treatment notes and other medical records support a finding that Plaintiff's mental health was largely stable from 2013-2017 when she complied

---

[65] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[66] *Id.*

[67] AR 657-61.

with her medications and abstained from substance abuse.[68] This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.[69]

Third, the ALJ's finding that Plaintiff's attempts to look for work, intermittent work, and return to school were inconsistent with her reported symptoms is rational—when considering these activities cumulatively—and is supported by substantial evidence.[70] Although Plaintiff's work was short-term and did not constitute substantial gainful employment, these cumulative activities rationally support the ALJ's decision to discount Plaintiff's reported disabling symptoms.[71]

---

[68] AR 714-39.

[69] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[70] AR 718 (working part-time as a receptionist), 725 (looking for a job), 734 (upcoming job interview), 738 (working and encouraged by sister to go back to school), 728 (continuing to work); *see also* AR 723 (Dr. Gonzalez recommending that she look for work); AR 714 (not working because boss was out of the country).

[71] *See Bray*, 554 F.3d at 1227 (rejecting the claimant's symptom testimony in part because the claimant sought work during period of alleged disability); *see also Woznick v. Colvin*, No. 6:15-cv-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr. 29, 2016) (finding the ALJ reasonably discredited the claimant's symptom testimony in light of her efforts to seek work); *Lizarraga v. Colvin*, No. CV 14-9116-FFM, 2016 WL 1604704, at *4 (C.D. Cal. Apr. 21, 2016) (same).

In summary, Plaintiff failed to establish the ALJ erred by discounting Plaintiff's symptom reports.

**D.    Steps Four and Five**

Plaintiff argues the ALJ erred at steps four and five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include the opined absenteeism and unproductivity limitations. Plaintiff's argument is based entirely on her initial argument that the ALJ erred in considering the medical-opinion evidence and Plaintiff's symptom reports. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence and Plaintiff's symptom reports were legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work and other work existing in the national economy.[72]

### V.    Conclusion

Accordingly, IT IS HEREBY ORDERED:

1.    The Clerk's Office is **directed to substitute** Andrew M. Saul as the Defendant and update the docket sheet.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

---

[72] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

3.      Defendant's Motion for Summary Judgment, **ECF No. 12**, is

**GRANTED**.

4.      The Clerk's Office shall enter **JUDGMENT** in favor of the Defendant.

5.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 15th day of October 2019.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge